AO 106 (Rev. 04/10) Application for a Search Warrant



MAR - 6 2019

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

CALL DETAIL RECORDS WITH LOCATION
INFORMATION FOR MOBILE #(917) 423-5945

)
)
)
)
)
)

Case No. 3:19SW092
Under Seal

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Southern___ District of ___Florida___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 1951(a) and 2 | Hobbs Act Robbery and Aid and Abet. |
| Title 18 U.S.C. § 924(c) | Use of a Firearm in a Crime of Violence |

The application is based on these facts:

See Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Philip Johnakin, Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 03/06/2019

City and state: Richmond, Virginia

/S/
David J. Novak
United States Magistrate Judge
*Judge's signature*

Honorable David J. Novak, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **(917) 423-5945**, THAT IS STORED AT PREMISES CONTROLLED BY **AT&T**, HEADQUARTERED AT **11760 US Highway 1, Suite 600, North Palm Beach, FL 33408** | Case No.3:19 SW092 <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, **Philip F. Johnakin**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(917) 423-5945**, ("the SUBJECT PHONE NUMBER"), that is stored at premises controlled by **AT&T**, a wireless telephone service provider headquartered at **11760 US Highway 1, Suite 600, North Palm Beach, FL 33408**. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. Your affiant is a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States

Code, Section 2516. I have over eighteen years of law enforcement experience stemming from employment as a police officer with the Henrico County Division of Police. Currently, I am a duly appointed Task Force Officer with the Federal Bureau of Investigation (FBI) and have been so since October 2015. I am assigned to the Richmond FBI's Central Virginia Violent Crimes Task Force and my duties include investigating bank robberies, armored car robberies, extraterritorial offenses, kidnappings, armed carjackings, and theft of government property. I have investigated numerous criminal violations and have obtained arrest and search warrants. I have personally participated in the investigation set forth below. The crimes I investigate are violent, usually involving two or more individuals, and I am familiar with the methods violent offenders use to conduct their illegal activities, to include their communication methods.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 of the United States Code, Sections 1951(a) and 2 have been committed by ANTHONY SIMMONS and ALI COUSINS JR. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. The United States, through the FBI's Central Virginia Violent Crimes Task Force (CVVCTF) is conducting a criminal investigation involving a series of five armed commercial robberies of the Dollar Tree, located at 8920 Patterson Avenue, Henrico, VA.

6. The first robbery took place on March 19, 2018, when two UNKNOWN SUBJECTS, entered the Dollar Tree located at 8920 Patterson Avenue, Henrico, VA, just prior to closing. As soon as the UNKNOWN SUBJECTS entered the business, UNKNOWN SUBJECT1 produced a semi-automatic handgun, and pointed it at R.B, victim store clerk, and demanded United States currency from the cash register drawer, as well as the safe. R.B. told the UNKNOWN SUBJECTS they did not have a safe. UNKNOWN SUBJECT 1 then placed the firearm into R.B.'s back which made him/her scream. After R.B. screamed, C.P., victim store manager, opened the door to the office where she was counting money to check on R.B. C.P. had United States currency in her hand when she opened the door, so the UNKNOWN SUBJECTS then rushed into the office with C.P. The UNKNOWN SUBJECTS demanded more money from C.P., who opened the store's safe and gave the UNKNOWN SUBJECTS approximately $1,556.00 in United States currency belonging to Dollar Tree. The UNKNOWN SUBJECTS then fled the business on foot towards Starling Drive. The UNKNOWN SUBJECTS were described as black males wearing black, full face masks, dark colored shirts, dark colored pants, and grey or black gloves.

7. During the months of June through August 2018, three additional robberies took place at or around the Dollar Tree at 8920 Patterson Avenue. Those robberies occurred on June 22; July 3; and August 6.

8. The fifth robbery took place on September 4, 2018, involving two subjects. After the robbery, one of the subjects, later identified as ALI COUSINS, JR., fled the Dollar Tree and got into the driver's seat of a 2009 Nissan Maxima. COUSINS then fled the area of the robbery. Law enforcement officers followed the vehicle until members of the Henrico Police attempted to conduct a traffic stop on the vehicle at the corner of Starling Drive and Sparrow Drive.

COUSINS's vehicle pulled onto Sparrow Drive and stopped suddenly. Then, COUSINS, the driver and only occupant, jumped from the driver's seat and fled on foot. After a short foot chase, law enforcement lost sight of COUSINS. A perimeter was set up in the area and police K-9 units responded to the area. COUSINS was seen again and a second foot chase occurred. Additional law enforcement officers responded to the area and the perimeter was widened. K-9 officers started to search the area resulting in an additional foot chase of COUSINS. During one of the foot chases, COUSINS dropped his cellular device on the ground ("COUSINS's PHONE"). The device was located, seized, and placed into evidence by law enforcement.

9. As a result of a continued ground search, law enforcement found COUSINS hiding in the crawl space of a nearby home. COUSINS was taken into custody without incident. In the crawl space where COUSINS hid, law enforcement located a wadded up ball of United States currency placed into the insulation and floor joist. The United States currency was seized and placed into evidence. Additional searches conducted by law enforcement resulted in the location of a silver and black semi-automatic handgun, a Jimenez, Model Nine, 9mm, Serial Number 379555 near where COUSINS had hidden.

10. COUSINS was transported to the Henrico Police headquarters where he was interviewed. COUSINS was advised of his *Miranda* Rights and spoke to law enforcement officers. COUSINS stated he and another person, who he did not identify at that time, robbed the Dollar Tree. COUSINS stated he had robbed the same Dollar Tree store on at least three other occasions, but did not do the robbery on August 6. COUSINS stated he had purchased the firearm he used in the robbery about 1 year prior and he used the same firearm each time he robbed the Dollar Tree. COUSINS further stated he used the same Nissan Maxima each time he robbed the Dollar Tree. Each time, COUSINS would go to CHRISTINA PILGRIM's home,

take the vehicle, and then return it after the robbery. COUSINS went on to say he had called PILGRIM while he was hiding from law enforcement and told PILGRIM to tell law enforcement it was him who robbed the store. During the interview with law enforcement, COUSINS identified the cellular device located by law enforcement during the foot chase as belonging to him. COUSINS used the cellular device to call his mother while with law enforcement.

11. During the course of the investigation, law enforcement learned COUSINS had been in a romantic relationship with PILGRIM and PILGRIM was pregnant with his child. A review of the Henrico Police incident reports showed PILGRIM had been present for at least one other robbery, the one on July 3, 2018. On September 18, 2018, law enforcement spoke with a coworker of PILGRIM at Dollar Tree and found PILGRIM worked on June 22, 2018 and July 3, 2018.

12. On December 21, 2018, COUSINS pled guilty in United States District Court to violations of Title 18 of the United States Code, Section 1951(a) and a violation of Title 18 of the United States Code, Section 924(c). In the statement of facts, COUSINS accepted responsibility for each of the robberies listed above.

13. On January 9, 2019, COUSINS and his attorney spoke with law enforcement agents about the robberies he had committed. During this interview COUSINS told agents he had committed the first robbery of the Dollar Tree on March 19, 2018, with Anthony Morton. COUSINS identified this person by photo obtained from the Department of Motor Vehicles. The person in the photo was ANTHONY SIMMONS, DOB: 01/06/19XX. COUSINS told agents he had approached SIMMONS the day of the robbery and asked if he wanted to help in committing the robbery. SIMMONS agreed. COUSINS and SIMMONS entered the Dollar Tree prior to closing and hid in the rear of the store until closing time. COUSINS and SIMMONS exited their

hiding spot wearing masks and COUSINS was armed with the firearm law enforcement seized after the September 4, 2018 robbery. COUSINS held the store employees at gun point, and SIMMONS took United States currency from the employees in the office. SIMMONS and COUSINS fled the store on foot. After COUSINS and SIMMONS fled the store, the two divided the money evenly.

14. COUSINS told agents he and SIMMONS fled the area on foot. COUSINS then called GREGORY SCOTT and asked SCOTT to pick he and SIMMONS up in the neighborhood behind the Dollar Tree. SCOTT did so. SCOTT then drove COUSINS and SIMMONS to meet PILGRIM at the Haynes store on W. Broad Street, Henrico, VA. COUSINS' returned the firearm he used to PILGRIM.

15. Agents have obtained the call detail records (CDR) records for COUSINS cellular devices for March, 19, 2018. The records show COUSINS made a phone call to **(917) 423-5945**, SUBJECT PHONE NUMBER, just after the robbery. Agents have searched the Henrico Police electronic databases and found GREGORY SCOTT provided the SUBJECT PHONE NUMBER to Henrico Police on July 8, 2017 when he was a reporting person in a domestic call for service.

16. On January 26, 2019, law enforcement used a computer program to search the SUBJECT PHONE NUMBER. The program places a call to the SUBJECT PHONE NUMBER, allowing it to make contact with the service provider switch and identify the service provider and the subscriber's name. The search showed the SUBJECT PHONE NUMBER's service provider was **AT&T** and the registered name was Elorine Scott.

17. In my training and experience, I have learned that **AT&T** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information

about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

18. Based on my training and experience, I know that **AT&T** can collect cell-site data about the SUBJECT PHONE NUMBER. I also know that wireless providers such as **AT&T** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

19. Based on my training and experience, I know that wireless providers such as **AT&T** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **AT&T** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and

experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE NUMBER's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

21. I further request that the Court direct **AT&T** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **AT&T** who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

22. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Philip F. Johnakin
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on 6th day of February 2019

/S/
David J. Novak
United States Magistrate Judge

UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(917) 423-5945** ("the Account"), that are stored at premises controlled by **AT&T** ("the Provider"), headquartered at **11760 US Highway 1, Suite 600, North Palm Beach, FL 33408.**

## **ATTACHMENT B**

### **Particular Things to be Seized**

### I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period March 1 2018 to March 30, 2018:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

    i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    ii. information regarding the cell towers and sectors through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of **Title 18 United States Code 1951(a) and 2** involving ANTHONY SIMMONS during the period **March 1, 2018 to March 30, 2018.**

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by **AT&T**, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of **AT&T**. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of **AT&T**, and they were made by **AT&T** as a regular practice; and

b. such records were generated by **AT&T** electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of **AT&T** in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by **AT&T**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____   _____
Date                                    Signature